Judge Mills
delivered the opinion of the Court.
Henry C. Gist, married Ann Paca; and before her marriage, being of full age, she had received from her guardian, a conveyance for 200 acres of land, and had executed to him, in consideration thereof, a discharge, for-the sum of sixteen hum dred dollars,duo to her, as his ward, it being her patrimony. After the marriage, Gist became dissatisfied with this payment, alleging, that the land was not worth the money, and that the arrangement was produced by the great influence her guardian bad over her, and the confidence reposed in him, and threatened to commence a suit, to set aside the conveyance, and for an account of her estate, whereupon, her guardian offered to receive a reconveyance oí the land, and to pay up the provided Gist would settle in trust for his wife, some lands of equal value. Gist acceded to this offer, and it was closed by Gist, on his first conveying to William W. Whitaker, in trust, for his wife, the quantity of 750 aefes of land, on which ho resided, dated on the Gth of February, 1811. In 1821, it appearing probable, that the wife of Gist, would never have children; without consulting the trustee, he and his wife, united in a, conveyance of the 750 acres of land, to Jesse Bled-soe, reciting (hat the conveyance to Whitaker, was not drawn, according to its instruction, as it did not expressly provide, that the land should descend to the children of the marriage, or in cas*3 there were none, went to Gist, and reciting that Bledsoe had stipulated, to furnish sixteen shares of bank stock, for the .support of Mrs. Gist, during life, and after her death, this land was to be conveyed by him, to her children; and if there were none, to her husband, or that he, Bled-soe, might become at his election, a purchaser of the land, at the price of five thousand dollars. This conveyance was executed and acknowledged, by the parties, before the clerk of the county court of Bourbon, and was there recorded, where the parties resided, but *237 was never recorded in Logan count y, where the land lay, or in any of the general recording offices.
Ann Gist, the wife, died childless,and Bledsoe not meeting to become a purchaser-of this land, conveyed it, by the directions of'Gist, to Preston Biair, who, together with H. C. Gist, tiled this bill against Whitaker, the trustee in the first conveyance, alleging, that the conveyance to him, Whitaker, was inartificialiy drawn, and had provided for the heirs general, of Atm Gist, and not the children of the marriage, which was intended; and that the word “heirs,” in the deed, ought to be construed, issue of her body, and there were some of the hitter character, and that ¡rom the whole face of the transaction, it ought to be construed, as intending, that the estate, should vest to H. C. Gist, and not to the collateral relations of the wife; and he also relies on the conveyances of Gist and wiie, to Bledsoe, and of Bledsoe to him, as passing all (he equity in the estate. He alleges, that Whitaker hesitates to convey the legal estate to him, because others set up claim to it, as heirs of Ann Gist. He prays for a conveyance, and surrender of the estate.
Whitaker declares himself ready to convey, as the purposes of the) trust are answered, but charges, that the brothers and sisters of Ann Gist set up claim to the land, and caution him not to convey the estate to Gist, or his assignees. He makes his answer, a bill against these collateral relatives of Ann Gist, and also a cross bill against Blair and Gist, and prays that they may be compelled to interplead with each other, for the purpose of determining, to whom the title belongs, and then he will convey the title accordingly.
Blair and Gist, do not answer this answer, in the nature of a bill of interpleader. The heirs of Ann Gist, answer and insist, that the expressions, “heirs” in the deed, cannot be answered, by construction, to mean children of tiie marriage only; that the conveyance from Gist to Bledsoe, is not properly executed, and that it is such, as Gist and wife had no right to make, without consulting the trustee, and that they are entitled to the estate, and they shape their answer, in the nature of a cross bill, against Whitaker, *238 the trustee, and pray (hat he may be compelled lis convey to them. To this, he made no reply, and in this situation, the cause came on for hearing, and the court below decided, that the word “heirs,” in the deed, must be construed to mean issue of the marriage, and that the estate would return to Gist, the grantor, or if this was not correct, the equitable irtf-terest, which Ann Gist held, during the marriage, was alienable by her, in conjunction with her husband; and that the disposition which she had made to Bledsoe, was a good one, and that the conveyance to him was valid; and the trustee was accordingly directed to convey the estate to Blair.
To reverse this decree, the trustee, and heirs of Ann Gist, have prosecuted their writ of error.
We cannot concur with that court, in supposing,, that the word “heirs.” as employed in the conveyance from Gist, the trustee, can be construed to mean issue only. We are aware of many'cases, where the word “heirs,” are thus limited, butthesegenerally, are cases of wills, where a greater latitude of construction to efe ctúate the intention of the testator, is indulged,, than can be allowed in deeds. There is ry> mistake,, in drafting this deed, and the presumption, that Gist could not intend to place this estate, in such an attitude, that it might escape from his family, is too weak to overrule the clear expressions of the deed, so often repeated. In the granting part, it expresses, that the estate is conveyed tó Whitaker, “in trust for the benefit of said Ann Gist, her heirs or assigns forever.” In the habendum and tenendum, it declares, that the estate shall be “retained, for the benefit of the said Ann Gist, her heirs and assigns forever.’’’’ Whitaker on his part, covenants, that he will hold the estate “in trust for the benefit of the said Ann, and her heirs forever." It is further remarkable, that there is not in the deed, the least intimation given, that the use or profits of this estate, is to be separately applied to Ann Gist, or to the family. The control of the husband over it, is not limited. He resided upon the land at the time, and might continue to do so, and take the profits; nor is there the least restriction iti the conveyance, on this disposition, which the wife- *239 or the husband, either jointl}' or separately -might make of the estate, and the conveyance places the estate,in a situation, by no means different from land's, the title of which, in fee simple, might be in the wife, except, that the trustee, and not the wife, held the legal estate. Besides, not only the word “heirs,” but. also, “assigns,” are contained in the grant, evidencing its alienable quality. With all thesec.ircumstanc.es, attending it, w-e see no propriety, in construing the, word “heirs,” to meau issue only. It must have its appropriate and usual signification applied to it.
This conclusion however, as remarked by the court below, cannot affect the title of the defendants in error, if Ann Gist united with her husband, could afterwards sell the estate, without uniting the trustee, and has really done so. The very act of constituting a trustee, seems to imply a guardianship, over the rights of the wife, aflli that he was the depository of the title, for safe keeping, which may seem at first, to negative the idea, of parting with the interest of the wife, without his concurrence. But still, in cases whore the wife has had a separate estate settled upon her, to her exclusive use, it has been frequently held, that she could part with it, without -the intervention of the trustee. Even iu cases, where the deed of settlement, has pointed out particular modes, by which she can part with it, this has not been held to imply a negative on other modes, which she may adopt,and that her vightto dispose of itisnol restrained unless there arc restraining clauses in the decid, prohibiting her disposition thereof. Gases of this kind, in the English chancery, are numerous, and we do not conceive it necessary, to recite or review them1; but will refer to the case of Jacques vs. the Methodist Episcopal church, 111. John. Chy. Hep. 77. In that case, chancellor Kent, who leaves no subject half investigated, collected and reviewed the whple, with a critical eye, and concludes, that they are too contradictory to be followed, and therefore, overruled their authority, and concludes, that the wife could • dispose of her separate estate, in no other way, than that pointed out in the settlement, and that to permit her to do so, was contrary to the spirit, and intent of -the contract, by which the settlement was made- *240 This decree was however, afterwards reversed, in the high court of errors, and appeals of New York, as will be seen in XVII. John. Rep. 548, and Johnson’s general index, to the New York chancery, VII. John. Chy. Rep. 12G, where it was held, that the wife could dispose of her separate estate, unless expressly restrained by the deed. The right of authority, ■is with this decision; but the reason and force of principle involved, is with the chancellor, whose decree was reversed.
If then a wife, incase ofseparate estate, with particular modes of disposition, pointed out, and contain objects of the trust specified, can dispose of it in other modes, and to other objects, it would séeni to furnish a strong argument that Ann Gist, by uniting with her husband, and without the trustee could dispose of this estate, in any legal mode, especially, as there are no particular objects of the trust, pointed out, and no restraint, or alienation.
The principle however,on which the cases referred to, have gone, is that a feme covert, with a separate estate, becomes by contract in equity,, a feme sole, and therefore, her acts are obligatory. But the estate in question, is not a separate estate. It is not by the deed, to be held by' the trustee, for the separate use, ami no modes of alienation, are named, and the effect of it, is to vest the interest in her, as if she had held it before the marriage, with this difference, that only the beneficial interest, without the legal estate, was with her, and her husband. She could therefore convey it, united with her husband, on being privily examined as the law directs, as other lands, unless, that as husband and wife, cannot, under our statutes enabling feme coverts to convey, pass an equity only in the wife, on privy emnniinulion, and this we are. net prepared to admit. If they can convey, when both tiie equity and legal estate, is vested in the wife, and the husband has the right therein, acquired by the marriage, it would seem to follow, that they can convey an equity only, ns the major includes the minor, and the whole, all its parts. To say they can convey such equity, not only conforms to the words of the different statutes, which declare, that all the interest *241 shall pass, but also avoids embarrassing consequences, with regard to equitable estates, held by the wife, We have heretofore decided, that the wife is to dower, in an equity only, and if we should now construe the statutes, so as to prevent her from passing that equity, by uniting with her husband, in a corn veyance thereof, as those statutes point out, it would follow, that the right of dower-, in such estates, could not be sold during the marriage, which would great-, ly fetter such estates, and they are numerous, and would destroy the alienable quality of much land, which was an evil, the legislature intended to remedy. We therefore conceive, that United with her husband, Ann Gist, could part with thisentire equity, which she held, having the legaLestate only, in the trustee, without his consent; the question then mains, did she do so, by the deed to Bledsoe, acknowledged, and recorded in the -county of Bourbon where the parties resided, when the lands lay in Logan.
Wife’s equity *n may by her and1* dur-ingcoverture, agination** recording’ deed in proper office.
By common not convey her real éstate, by deed and nation, and title must ren ^“"lin ber r¡a”eS maC’
ÍÍ this alienation can be sustained, it must be by the statute of 1810,1. Dig. S. L. 323, and not under any other statute, within the recollection of the court.
Here an objection was taken to this title, under which, the defendants in error, claim, by the counsel for the plaintiffs, which was not very confidently relied on, and was treated lightly by the counsel of the defendants, in this court. But it has proved a most formidable obstacle, to the relief granted below, in the minds of this court. It is this, that the bare acknowledgment, and privy examination of the wife, in the county of Bourbon, and recording the deed there, js insufficient to pass the title.
To understand this objection, we will observe, that anterior to any legislation on the'subject, by the rales of the common law, a feme covert, could not convey her real estate, by deed or by privy examination, and the title must remain in her, during the marriage. 7 o remedy this, and unshackle such estates, and bring them into market, was the design of the legislature, in passing such acts; and whilelt is conceded, that such estates can be conveyed, under the statutes, *242 jj; ¡g contended, that to do so, the requisitions of the statutes, must be substantially complied with, and whatever the legislature has said shall be done, must be performed, or the title does not pass.
Before the passage of the act of 1810, to which we have alluded, a married woman might, in different modes, be examined, when the estate was in her, and before the clerk of the county, where the land lay, or the clerk of the general court, or court of appeals, she might be privily examined, but there was no authority given to the clerk of any other county, where the land did not lie, to take such privy examination, and if he did so, it was void. It.was thought tobe convenient, to permit a husband and wife, residing in a county, where the land did not lie, to go before their proper clerk, nearer home, and there have the examination taken, and acknowledgement made,and to get ■it certified, to the proper recording officer; to allow =this, was the ebject-of the act, under which this deed was attempted. But in permitting this, it-was competent for the legislature; to point out the particular ■acts and requisites, that should be performed, before title should pass. This they have done, and it will be seen, that the parties in this instance, did not com- ■ ply with them. The act reads thus: “And if the -due acknowledgement, or privy examination of the ■ wife, of the person making the deed, shall have been taken by the court or clerk, receiving the acknow-ledgement, and proof of the deed, as the case may Re, and that being also duly certified with the deed, ■mid recorded, shall transfer such wife’s estate, or dowser, in such land, as fully, as if the examination, had been made by the court, or clerk, in whose office, the -deed shall be recorded.”
The-words “and recorded,” in this provision, both:from what precedes, and what follows, evidently^ means, the recording in the officp; where the land lies, or in one of the general recording offices. It is therefore evident, t iat the legislature has made the recording the deed, in the proper office, and that in the time prescribed by law, one of the essential requisites, to •passing the estate. The acknowledgement, and privy examination's not enough, the recording must follow , *243 Many instances might be produced, of a similar effect being given to statutes, requiring recording to bé performed, as part of the acts necessary to be done. the first statute of this country, fillowing emancipation, directed that deeds of emancipation, should not only-be proved or acknowledged, but also recorded, and then the slave should be free, and it-has been held, that recording was essential to the title to freedom. The act directing sheriffs, to convey lands, sold under execution, is expressed in like manner, and a like construction has been given to it, to ¡'ass. the title. The British statutes, directed, that deeds to the assignees of a bankrupt, should be proved or acknow» ledged and recorded, and then the title should pass, and it has been held, that no title passed,, without the recording. If the legislature, had put the stress of; passing the title of the wife, upon the acknowledgement, or^privy examination alone, we would. hav.e been able to sustain this deed.' But this is not the case; recording also, in the proper office, is added, and with reluctance, we are compelled to say, that by the words of the statute, and force of authority, the deed did not pass the title of the wife. We take no exception to the acknowledgement, or,privy examination, certified by the clerk of Bourbon. This appears to liave been done in due form of láw. He has also recorded the deed. But this was not only useless, and unnecessary, but was without the pale of his authority. It is the want, of recording in proper time, in the county of Logan, or in the office of the general court, which destroys the effect of the_deed, as to the wife,and aS to the title of the husband; as she died without a child born, it ceased with her existence, and the land passed, by the terms of the deed itself, as wellas the law of the land, to her heirs at law.
Deed, 0on? veyins; wife’s eqvRy m her during cover-ture, imísíbe recorded in fnuproper office; otherwise, ofn" effeo£‘-
It follows, that the decree must be reversed, and the original bill be dismissed with costs, and the cross bill, of the heirs at law, must prevail, and they must have a decree, that the legal estate be released to them, by the trustee, but without costs. The trustee prayed that the complainant below, might be compelled to interplead.. But the attempt is a lame one, to an interpleader.. Instead of either the original complainants, or the heirs at law, becoming cora- *244 plainants, and the other side respondents, the heirs only made their answer a cross bill, against the trustee. But still, as the original complainants, are not and the heirs are entitled to (he estate, a decree on the answer of the latter, in nature of a cross bill, can be entered, in their favor, and the controversy ended; especially, as the original complainants, can have no claim, but what can be well decided between them and the trustee.
Barry and Depew, for plaintiffs; Crittenden, for defendants.
Jan. 12,1830.
Deed otfeme covert, will pass no interest in her land,except in her sepa-róle estate, unless her privy acknowledgement is recorded in proper time. Nor will chancellor otherwise enforce contract.
Decree reversed, with costs, and cause remanded for a decree, in conformity with this opinion.
Note. Chief Justice Bibb did licit sit ill this case.
The above opinion was suspended, and so remained, until the following confirmatory decision was pronounced.
Chief. Justice Robertson
delivered the opinion of the Court.
We concur with our predecessors, in the opinion, that the deed of trust did not vest “a separate estate,” in Mrs. Gists
We concur, also, ifi the opinion, that the recording of the deed was necessary, to pass the interest of the wife. See the act of 1748, sections 7-8. I. Dig. 305; ?md the act of 1810, lb. 522.
If the estate be not a separate estate in the wife, she must be considered, in relation to this, as well as. other rights, as a feme covert; and as such, no interest which she held in land, could be transferred, unless her prior acknowledgement had been recorded in proper time. Nor could her deed, for such interest, without the recording of her acknowledgement, vest any interest whatever. Consequently, the.chancellor could not enforce the contract. Such seems to us to be the only allowable or consistent construction of the legislative enactments, in reference to this subject.
All the reasons which require the privy examination of the wife, and the registration of it, in other cases, apply with equal emphasis, to such a case as this.
She is supposed to be under the dominion of her husband; and one object of the conveyance in trust for her use, and perhaps the only object, whs to. *245 pi event the exercise of his influence, so as to di4 vesther of the benefits, secured to her by the deed.
Qua re. Land conveyed in esTof/á™" covert and her heirs, can shq currence of i,er equitable interest,
The deed has not vested her with any controul over the legal title; nor prescribed any mode, for alien.ting her interest. And we should, therefore, fee! some doubt, whether she could, without the concurrence of her trustee, divest herself, whilst -covert of her interest, further than that which she had in the profits, during coverture.
It was evidently the object of the deed, to prevent any alienation by her, of the fee, during .coverture, without the assent of the trustee. We are aware, that the weight of authority in England, inclines in favor of her power, when it is not expressly interdicted. But we are not sure that the statutes of this state, have overruled the British doctrine. This isa question worthy of grave consideration.
It results, therefore, that the only doubt we have, is, whether our-predecessors did not go too far, when they decided, that the interest of Mrs. Gist was alienable, without the co-operation of her trustee; and we make the suggestion, only to prevent the question from being concluded, as it would be by our silence on that point.
But, our concurrence in so much of the opinion, as denies the right of Blair and Gist, renders an examination of the doubtful proposition unnecessary.
If her interest be alienable, by herself- and husband alone, Mrs. Gist’s acknowledgement must be recorded, before the deed can have any effect against her, or her heirs.
If it be not alienable without the concurrence of her trustee, then it is not material, whether, if it had been alienable; any available right, could have been transferred by the deed, without recording her acknowledgement.
Wherefore, the judgment must remain unaltered.
By common law, if only authority to sell land-wilhout interest be given to executors, sale not valid unless they all unite in it. But if laud be rie-vised to executors to sel!, those who qualify may sell.
By statute,! such executors as fy, may sell land devised to lie sold, if no other person appointed for that pulpóse.
‘Devise to executors, to sell land, jis they may judge necessary, does not authorize, one executor to sell.
. ^‘ses’e“jtliat lancl," for payment o.fdebts, if personal insufficient,” gives power to executors who qualify to sell.
ifex’r;hav-ins; authority-for- payment of debts, in ' set?, sell ^niency^of' asset», sale is, nevertheless, mlld'
To obtain re-Hef against ground that consideration wascommon-wealth’s paper, mmtbe that not” was procured for dollars,thro’ take,
Crittenden, for appellant; Wick/iffe and Woolley, for appellees.